**SMITH, Attorney General of Kansas, v. TILLITSON.***

Circuit Court of Appeals, Eighth Circuit.
November 26, 1928.

No. 8089.

*Rehearing denied February 20, 1929.

Roland Boynton, Asst. Atty. Gen. (William A. Smith, Atty. Gen., on the brief), for appellant.

Hal M. Black, of Wichita, Kan. (Arnold C. Todd, of Wichita, Kan., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. Appellee, doing business as the Tillitson Specialty Company, has slot vending machines for distributing candy confections; at the top thereof there is a coin intake about the size of a five-cent piece; by putting in the coin and operating a lever the confection is ejected. A selection of flavors is given. At intervals, in addition to dispensing the candies, the machine delivers what are called "no value" tokens, which have no cash or redemption value. The delivery of these tokens by the machine is dependent upon chance. The customer always receives a five-cent package of confections, and at times receives in addition thereto one or more of these tokens. By placing a token in the machine and operating the lever, the purchaser, by means of a mechanical device housed in the machine, is given additional amusement by way of having his fortune told; the same being displayed through a window in the top of the machine. These tokens can be used for no other purpose, either in the purchase of merchandise or otherwise, and title to them is expressly reserved in the owner of the machine. The candy is of the sale value of five cents, and the same amount in such value is given to each customer, irrespective of whether it is accompanied by one of the tokens.

The operation of this machine is claimed by the law officers of the state to be in violation of section 21—1507, R. S. of Kansas 1923, which reads as follows:

"The operation of any machine or mechanism for gambling purposes, and particularly those machines commonly known and designated as 'slot machines,' in the operation of which cash prizes or other valuable things are given, shall be deemed a misdemeanor."

Another Kansas statute, section 21—919 (Laws 1907, chapter 263, § 2), provides as follows:

"*Complaint; warrant; proceedings.* Upon the filing of a complaint or information charging that a place is kept or maintained as a common nuisance by any person or persons as defined in this act, and that gaming tables, gambling devices, or such other property as is generally used and kept in maintaining a common gaming house, are kept or maintained therein, a warrant shall issue commanding the officer to whom it is directed to arrest the person or persons in such complaint or information charged and described, and seize and take into his custody such gaming tables and gambling devices and other property described in said complaint or information which he may find in such place, or upon such places, and safely keep the same subject to the order of the court. The complaint or information shall describe the premises to be searched with sufficient particularity to identify the same, and shall describe the gaming tables or other gambling devices or other property alleged to be used in maintaining the same as particularly as practicable; but any description, however general, that will enable the officer executing the warrant to identify the property to be seized and the person to be arrested shall be deemed sufficient. Upon the return of the warrant the court shall proceed as against the person or persons arrested, and it shall be the duty of the judge of such court to fix a day for a hearing as to the personal property seized, and to cause a notice thereof to be served upon the owner of said gaming tables and gambling devices and other property so seized, or upon his agent or other person in possession or control of the same, that the property has been so taken, and requiring him to appear on said day and answer the complaint made against such gaming tables, gambling devices, and other property, and show cause, if any he has, why the same should not be adjudged forfeited and ordered destroyed; the time and mode of service to conform as near as may be to the law provided for the service of summons in civil actions."

Complainant is a citizen of Aurora, in the state of Illinois, and brings this suit in the District Court for the District of Kansas against the Attorney General of the state of Kansas, and the law officers of Sedgwick, Cowley, Sumner, Nye, Harvey, Reno, Saline, Dickinson, Geary, and Riley counties, and of the cities of Wichita, Arkansas City, Winfield, Wellington, Hutchinson, Salina, Abilene, Junction City, Manhattan, Independ-

ence, Coffeyville, Chanute, Girard, and Columbus, to enjoin them from seizing, confiscating, or in any wise interfering, directly or indirectly, with the operation of said confection vending machines in the state of Kansas. He alleges that he has a large sum of money invested in said machines throughout the state of Kansas, and that the law officers of the state, and of the several counties and cities named, "are about to seize plaintiff's confection vendors, and hold them until the final determination of the matter in controversy, which might be for a long period of time; that there is no provision in the laws of the state of Kansas for the giving of a redelivery bond or a stay bond, and said property cannot be recovered from the defendants and their officers by any process known to the law, because the defendants will charge and are about to charge that said machines are an instrumentality used in the commission of a crime, and as such, under the laws of the state of Kansas, would be held by the defendants and their officers until the final determination of the issue, which would deprive the complainant of his property without due process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States, and would totally destroy complainant's business without due process of law, and in violation of the Constitution of the United States of America."

He claims that the gaming laws of Kansas do not apply to his machine, for the reason that it gives nothing of value in the way of prizes or otherwise, and is in no sense a gambling device. The motion of the Attorney General to dismiss the bill of complaint, on the ground of insufficiency of fact to constitute a valid cause of action in equity, was overruled, and the court, upon the allegations of the verified bill, issued an interlocutory injunction whereby the defendants, and every other person acting, or attempting to act, for them, during the pendency of the cause, were restrained and enjoined from seizing, confiscating, or in any way interfering with the operation of plaintiff's automatic vending machines at or in any place whatsoever within the state of Kansas. From that decree this appeal is taken.

The bill in this case is somewhat anomalous. It does not attack the validity of any Kansas statute against gaming or gambling devices. It does not plead the threat or imminence of arrest or prosecution, but asserts that the law officers of the state are about to seize and hold the property of complainant, presumably under the provisions of

section 21—919, quoted above. That section provides for the arrest of the person or persons operating the gambling devices of which it treats, and therefore contemplates prosecution, and forms a part of the established criminal procedure of the state. It is undoubtedly true that, where state officers attempt to enforce an unconstitutional law, or exceed their authority in an attempt to enforce a valid law, where property rights will be destroyed, or seriously impaired, unlawful interference by criminal proceedings may be reached and controlled by a court of equity. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Dobbins v. Los Angeles, 195 U. S. 223–241, 25 S. Ct. 18, 195 U. S. 223, 49 L. Ed. 169; Western Union Tel. Co. v. Andrews, 216 U. S. 165, 30 S. Ct. 286, 54 L. Ed. 430; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 S. Ct. 498, 47 L. Ed. 778. In the case last cited (189 U. S. loc. cit. 217, 23 S. Ct. 500), it is held that "a court of equity has no general power to enjoin or stay criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is an issue there, or to prohibit the invasion of the rights of property by the enforcement of an unconstitutional law," and reference is made to the leading case of In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402, in which this principle is announced in an elaborate opinion. In the latter case this language is used:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government. * * * The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is an issue there. Attorney General v. Cleaver, 18 Ves. 211, 220; Turner v. Turner, 15 Jurist, 218; Saull v. Browne, L. R. 10 Ch. 64; Kerr v. Preston, 6 Ch. D. 463."

In Harkrader v. Wadley, 172 U. S. 148–

169, 19 S. Ct. 119, 127 (43 L. Ed. 399), the rule is restated that a court of the United States sitting in equity has no jurisdiction to stay by injunction proceedings in a state court, and in the name of the state, to enforce the criminal laws of the state. Mr. Justice Shiras, speaking for the Supreme Court says:

"No case can be found where an injunction against a state officer has been upheld where it was conceded that such officer was proceeding under a valid state statute. In the present case the commonwealth's attorney, in the prosecution of an indictment found under a law admittedly valid, represented the state of Virginia, and the injunctions were therefore in substance injunctions against the state. In the proceeding by indictment to enforce a criminal statute the state can only act by officers or attorneys, and to enjoin the latter is to enjoin the state. As was said in Re Ayers, 123 U. S. 443, 497 [8 S. Ct. 164, 179 (31 L. Ed. 216)]: 'How else can the state be forbidden by judicial process to bring actions in its name, except by constraining the conduct of its officers, its attorneys and its agents? And if all such officers, attorneys and agents are personally subjected to the process of the court, so as to forbid their acting in its behalf, how can it be said that the state itself is not subjected to the jurisdiction of the court as an actual and real defendant?'"

The claim of injury to property incidental to the execution of the criminal laws of the state is thus met by the Circuit Court of Appeals of the Sixth Circuit in Arbuckle v. Blackburn, 113 F. 616, 625, 65 L. R. A. 864:

"We are now dealing with an officer of a state proceeding under a valid law of the state, and whose error lies in wrongfully construing the statute so as to include the complainant's product. To entertain the bill in this aspect would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty. It would be the extension of equity jurisdiction to cases where prosecutions in state courts by the state officers are sought to be enjoined, with a view to determining whether they shall be allowed to proceed under valid statutes in the courts of law. We think this an enlargement of the jurisdiction opposed to reason and authority. It is claimed, however, that conceding that a court of equity cannot enjoin the prosecution of criminal offenses, as

a general thing, the rule is different when property rights are involved; and we are cited to cases holding that equity has jurisdiction to enjoin acts likely to be destructive of property rights, although the acts complained of constitute infractions of the criminal law. This is quite a different proposition from enjoining criminal proceedings alleged to be indirectly destructive of property rights. Many criminal prosecutions may affect the property of the person accused. A property may be greatly injured by the wrongful and unfounded charge that it is used for immoral purposes. Such prosecution may destroy its rental value and prevent its sale, yet a court of equity could not usurp the right of trial which both the state and the accused have in a common-law court before a jury. Every citizen must submit to such accusations, if lawfully made, looking to the vindication of an acquittal and such remedies as the law affords for the recovery of damages. It is often a great hardship to be wrongfully accused of crime, but it is one of the hardships which may result in the execution of the law, against which courts of equity are powerless to relieve. Suess v. Noble (C. C.) 31 F. 855; Hemsley v. Myers (C. C.) 45 F. 283; Kramer v. Board, 53 N. Y. Super. Ct. 492, 1 N. Y. S. 252; Food Co. v. McNeal, 1 Ohio N. P. 266."

The same conclusion is reached in an able opinion by Judge Grubb in the Northern District of Alabama (Consumers' Co. v. Austin, 238 F. 616), cited with approval by the Circuit Court of Appeals for the Second Circuit in Hoffman Brewing Co. v. McElligott, 259 F. 525. In that case the rule is stated in the following language: "A suit to enjoin a United States attorney from instituting criminal proceedings under a federal statute is a suit against the United States, which cannot be maintained unless property rights are threatened with irreparable damage, and the statute is either unconstitutional or the attorney in transcending his authority under a valid statute." See, also, the decision by three judges in Herkness v. Irion et al. (D. C.) 11 F.(2d) 386.

The order of the trial court in terms enjoins the officers of the state from seizing, or in any way interfering with the operation of, complainant's vending machines at any place within the state of Kansas. It is true that the order is a temporary one; but surely it cannot be supposed that upon final hearing the court would "subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of of-

fenses where it would have no jurisdiction to punish the parties if found guilty." In view of the debatable character of appellee's device, it is not to be anticipated that the defendants, or any of them, will resort to drastic measures, resulting in unnecessary injury to appellee's property and business in advance of determination of the question at issue in the courts of the state. The case is clearly one for their exclusive jurisdiction.

Our attention has been called to the decision of this court in Weyman-Bruton Co. v. Ladd (C. C. A.) 231 F. 898. In that case it was expressly noted that the jurisdiction was not questioned by motion to dismiss, and the case went to final hearing on the merits. A major complaint was that the business of complainant had been greatly injured by circulars sent out by a state officer to its patrons. The menace of prosecution seems to have been indirect, in that it threatened such patrons, rather than the complainant itself. The parties appear to have joined issue upon the merits by common consent. These considerations seem to have had weight at the hearing in this court. However, in any view, the decision in that case, and the jurisdiction apparently assumed, is to be limited to the situation there presented, and is not to be construed as in conflict with the views herein expressed.

The order and decree appealed from are reversed, and the cause remanded to the District Court, with directions to dismiss the bill.

It is so ordered.