11 N.J. Super. 487 (1951)
78 A.2d 595
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT.
v.
CARL WEITERSHAUSEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1951.
Decided February 2, 1951.
*489 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Anthony A. Calandra for the appellant.
Mr. Maurice J. McKeown for the respondent (Mr. Richard J. Congleton, Essex County Prosecutor, attorney; Mr. C. William Caruso, Legal Assistant Prosecutor, on the brief).
The opinion of the court was delivered by JACOBS, S.J.A.D.
The defendant appeals from his conviction for the possession and sale of obscene pictures.
The defendant conducts a book store at 279 Market Street, Newark. On October 15, 1949, a young man named Rossi was in the store selecting pictures from a black double index book which contained numerous photographs of women, mostly nude. At that time officers of the Newark Police Department entered and searched the premises, confiscated twenty or thirty thousand pictures and arrested the defendant. On January 26, 1950, McGovern went to the store, asked the defendant for the "nude photographs that he had" and purchased several sets. These were taken by officers of the Newark Police Department *490 who again searched the premises and confiscated "thousands of photographs and a few magazines."
Thereafter the defendant was indicted and brought to trial for having possessed and sold obscene pictures contrary to R.S. 2:140-2. The prosecutor in his opening outlined the pertinent circumstances, advanced the State's contention that the pictures which were to be introduced in evidence were obscene, and asserted that a verdict of guilty would be expected if the jury so found. The defendant sought but was denied amplification of the opening. The State then introduced testimony by the police officers and Rossi and McGovern and placed into evidence, without objection, all of the confiscated pictures. The defendant did not testify and no other oral testimony on his behalf was presented; the lower court rejected his offer in evidence of the September 11, 1950, issue of Life magazine which contained reproductions of famous paintings including, among others, Rembrandt's The Painter's Study, and Goya's The Maja Nude. The defendant's motion for judgment of acquittal was denied.
In its charge the trial court submitted to the jury for its factual determination the issue of whether, in the light of all of the evidence in the cause, the pictures which were possessed and sold by the defendant were obscene and indecent. In defining these terms the court pointed out they were words of common usage, "suggestive of lustfulness, lasciviousness, and sensuality." It further pointed out that the test for obscenity was "whether the pictures would tend to deprave the morals of those into whose hands they might fall by suggesting lewd thoughts and exciting sensual desires." It cautioned the jury that pictures or paintings of nude women are not of themselves obscene or indecent and that the ultimate determination "may well depend on the character of the pictures, the pose portrayed, the expression shown, the number and sequence of a group of such pictures, or the sensually suggestive character of the pictures." Finally, it expressed the view that a proper test of the obscenity of the pictures would be "whether their motive as portrayed by them is morally pure or impure, whether they are naturally calculated *491 to excite in a spectator morally impure imaginations and whether the other incidents and qualities however attractive are merely secondary to this as their primary or main representation." The defendant did not object to any portion of the charge as rendered but did object to the court's refusal to grant several of his requests to charge. The jury returned a verdict of guilty and the defendant was duly sentenced.
Much has been written as to when and by whom matter may properly be found obscene and indecent with appropriate consequences prescribed by law. See Roth v. Goldman, 172 F. 2d 788, 790 (2d Cir. 1949); cert. denied, 337 U.S. 938, 93 L.Ed. 1743 (1949); State v. Lerner, 81 N.E.2d 282 (Ohio C.P. 1948); Lerner, "Judicial Censorship of Obscene Literature," 52 Harv. L. Rev. 40 (1938). Many of the recent cases have dealt with apparently sincere though outspoken novels (Commonwealth v. Isenstadt, 318 Mass. 543, 62 N.E.2d 840 (1945)), while others have dealt with purportedly serious presentations of nudism in art and as a cult. Parmelee v. United States, 113 F.2d 729 (D.C. Cir. 1940); State v. Lerner, supra. The important issues concerning proper freedom of expression which were presented in the cited cases do not appear to trouble us here; the evidence in the instant matter clearly indicates that the pictures which consisted of actual photographs of women in progressive stages of undress, in suggestive postures and in the nude, were not being distributed for any socially defensible purpose.
Although the words obscene and indecent are commonly used and understood they are probably not susceptible of precise legal definition. Cf. Commonwealth v. New, 142 Pa. Super. 358, 16 A.2d 437 (1940); United States v. Levine, 83 F.2d 156 (2d Cir. 1936). In the Isenstadt case, supra, Justice Qua recently expressed principles which may be accepted as controlling. He stated that material may be deemed obscene and indecent within a statutory prohibition if it has a substantial tendency to deprave or corrupt its readers or viewers by "inciting lascivious thoughts or arousing lustful desire;" the material is to be judged in the light of the customs and habits of thought of the time and place *492 and where reasonable men may differ the question is one of fact to be determined by the jury as representative of a cross-section of the community; and he declined to upset a verdict of guilt because he was unable to conclude that, even in "this post-Victorian era," the jury could not properly upon the evidence presented reach the conclusion that the material was obscene and indecent. But cf. 59 Harv. L. Rev. 813, 814 (1946). Applying similar views we have little hesitancy in finding that the defendant's conviction in the case before us must stand.
The opening by the State properly outlined the nature of its case and the proof to be submitted and the lower court did not err in declining to direct that it be supplemented. The State's position that the pictures were obscene and indecent was entirely clear to persons of understanding and no purpose would have been served by attempting to detail the particular elements of obscenity and indecency. Similarly, we find no error in the refusal to direct a judgment of acquittal. The lower court examined the pictures and concluded that reasonable men could find as a fact that they were obscene and indecent; nothing has been presented to cause us to differ with its conclusion.
The defendant contends that the lower court's exclusion of the September 11, 1950, issue of Life magazine was prejudicial error. The authorities seems to support its ruling. See Commonwealth v. Isenstadt, supra, and Commonwealth v. Donaducy, 76 A.2d 440 (Pa. Super. 1950), where Judge Ross states that the "test for obscenity is not a comparison with other publications which may or may not be obscene." In any event, the reproductions of the paintings in their settings were in no wise comparable to the pictures being sold at the defendant's store, and the exclusion of the magazine was not prejudicial.
The defendant's final contention is that the lower court erred in denying its requests to charge numbered 18 to 20 inclusive. Number 18 stated that the test of obscenity was not indecency in a picture because of its "capacity" of suggesting impure thoughts. See People v. Muller, 96 N.Y. 408, *493 411 (1884). The trial court had not intimated that it was and in view of its affirmative definition of obscenity, to which no objection was made, there was no occasion for the additional instruction or prejudice in its omission. Number 19 to the effect that the criterion of decency is fixed by "time, place, geography and all the elements that make for a constantly changing world" (People, on Complaint of Sumner v. Miller, 155 Misc. 446, 279 N.Y.S. 583 (City Ct. 1935)), might perhaps have been charged but here again there was no occasion for it and its omission was not prejudicial. Number 20 which defined obscenity as "something filthy, foul, loathsome, disgusting" was incomplete and its rejection in the form submitted was proper. State v. Simmons, 120 N.J.L. 85, 91 (E. & A. 1938). The defendant was fairly tried and convicted on adequate evidence and we find no error which may be said to have caused him any manifest wrong or injury within Rule 1:2-19. Accordingly, the judgment of conviction is
Affirmed.