# Court of Appeals.

*October*, 1884.

## PEOPLE *v.* MULLER.

(Affirming 2 *N. Y. Crim. Rep.* 279.)

OBSCENE AND INDECENT PICTURES, &c.—PENAL CODE, § 317.—
INTENT.—EVIDENCE.

Defendant was indicted under the Penal Code, § 317, for having in his possession, and also for selling, certain obscene pictures. These pictures were produced before the jury, and it was proved that defendant sold them in the ordinary course of his employment as a clerk in a store. The judgment of conviction was affirmed by the General Term, said pictures being also produced before it. On appeal to the Court of Appeals, the record contained no special description of the photographs, except that they represented nude females, and were copies of certain paintings which had been exhibited in the Salon at Paris, and one of them at the Centennial Exhibition in Philadelphia, and that among them were pictures designated by certain specified names. *Held*, that if defendant desired to insist that the finding of the jury was unsupported by evidence, on the ground that the pictures themselves showed they were not obscene, it was his duty to make them part of the record, or to give notice to the district attorney to produce them.

The proper test of obscenity in a picture or statue is, whether its motive is pure or impure; whether or not it is naturally calculated to excite in a spectator impure imaginations; and whether or not the other incidents and qualities, however attractive, are merely accessary to this as the primary or main purpose of the representation.

As the words of the statute are descriptive and in common use, and every person of ordinary intelligence understands their meaning, and readily, and in most cases, accurately applies them to any object or thing involving a judgment as to the quality indicated, the opinions of witnesses, whether experts or not, as to such question, are inadmissible.

The testimony of witnesses skilled in matters of art, to the effect that there is a dividing line, as understood by artists, between pure and impure or indecent art, is inadmissible.

That the originals of the pictures in question were exhibited at public places of high repute, does not as matter of law forbid a finding by the jury that the photographs were obscene and indecent.

There is but little scope for proof bearing upon the issue of obscenity beyond the evidence of the picture itself.

There is no exception in the statute by reason of any special intent in making the sale. Its object is to suppress the traffic in obscene publications, and to protect the community against the contamination and pollution arising from their exhibition and distribution.

Whether or not a publication is obscene, may in some cases depend on circumstances, as in the case of a medical work for the instruction of medical men.

APPEAL from judgment of the General Term of the First Department affirming the conviction of the defendant, August Muller, at Oyer and Terminer, of the misdemeanor of having and selling indecent and obscene pictures.

For facts and points of counsel see *ante*, 279.

*John D. Townsend*, for the prisoner, appellant.

*Peter B. Olney*, District Attorney, and *John Vincent* (assistant), for the people, respondent.

ANDREWS, J.—The first count in the indictment charges the defendant with selling an indecent and obscene photograph, representing a nude female in a lewd, obscene, indecent, scandalous, and lascivious attitude and posture, and the second count charges him with having in his possession divers lewd, scandalous, obscene and indecent photographs of the same character, with intent to sell the same. Section 317 of the Penal Code declares among other things, that a person who sells, lends, gives away, or offers to give away, or shows, or has in his possession with intent to sell, or give away, or to show, or advertise, or otherwise offers for loan, gift, sale or distribution, an obscene or indecent book, writing, paper, fixture, drawing or photograph is guilty of a misdemeanor. The evidence on the trial in support of the indictment related to nine photographs produced before the jury, which were proved to have been sold by the defendant in the ordinary course of his employment as a clerk in a store for the sale of books, pictures, and photographs, in the city of New York.

The record contains no special description of the photographs, except that it appears that they represented nude females, and were photographic copies of paintings which had been exhibited in the Salon in Paris, and one of them at the Centennial Exhibition in Philadelphia, and among them were pictures designated "L'Asphyxie," "After the Bath," and "La Baigneuse."

The jury, by their verdict of guilty, necessarily found that the photographs were obscene and indecent. The exhibits were produced on the argument of the appeal at the General Term, and the court in its opinion expressed its concurrence with the finding of the jury, saying that they might very well have found that the photographs were both indecent and obscene. They were not produced in this court, and we are unable to pass upon the question of their obscenity or indecency from the pictures themselves. If the defendant's counsel desired to insist in this court, that the photographs were not in fact indecent or obscene, and that this appeared from the photographs themselves, and that the finding of the jury was therefore without evidence to support it, it was his duty to have furnished them as a part of the record, or to have insisted upon their production by the district attorney.

Upon the case as presented, we must assume that the pictures were of the character described in the indictment. But exceptions were taken by the defendant on the trial which render it necessary to consider to some extent the scope of the statute, the method of trying the issue of obscenity and indecency, and the relevancy of proof of an innocent intent on the part of a defendant charged with a violation of the statute.

It is to be observed that the statute does not undertake to define obscene or indecent pictures or publications. But the words used in the statute are themselves descriptive. They are words in common use, and every person of ordinary intelligence understands their meaning, and readily, and in most cases accurately applies them to any object or thing brought to his atttention which involves a judgment as to the quality indicated. It does not require an expert in art or literature to determine whether a picture is obscene or indecent, or whether printed words are offensive to decency and good morals. These

are matters which fall within the range of ordinary intelligence, and a jury does not require to be informed by an expert before pronouncing upon them.   It is evident that mere nudity in painting or sculpture is not obscenity.   Some of the great works in painting and sculpture, as all know, represent nude human forms.   It is a false delicacy and mere prudery which would condemn and banish from sight all such objects as obscene, simply on account of their nudity.   If the test of obscenity or indecency in a picture or statue is its capability of suggesting impure thoughts, then indeed all such representations might be considered as indecent or obscene.   The presence of a woman of the purest character and of the most modest behavior or bearing, may suggest to a prurient imagination images of lust, and arouse impure desires, and so it is of any picture or statue.

The test of an obscene book was stated in Regina v. Hicklin (*L. R.* 3 *Q. B.* 369) to be, whether the tendency of the matter to be charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and who might come in contact with it.   We think it would also be a proper test of obscenity in a painting or statue, whether the motive of the painting or statue, so to speak, as indicated by it, is pure or impure, whether it is naturally calculated to excite in a spectator impure imaginations, and whether the other incidents and qualities, however attractive, were merely accessary to this as the primary or main purpose of the representation.

The defendant, on the trial, called as witnesses an artist who had practiced painting for many years, and also a person who had been engaged in the study of art.   They were asked by defendant's counsel whether there was a distinguishing line, as understood by artists, between pure art and obscene and indecent art.   The question was objected to by the prosecutor, and excluded by the court.   The issue to be tried was whether the particular photographs in question were obscene or indecent. The defendant was entitled to prove in his defense any facts legitimately bearing upon this issue.   The fact that the original pictures of which the photographs were copies had been exhibited in the Salon in Paris was admitted by the prosecution, and it was proved that one of them had been publicly exhibited in

Philadelphia. But this did not, as a matter of law, exclude a finding by the jury that the photographs were obscene and indecent. It is not impossible certainly that the public exhibition of indecent pictures may have been permitted in Paris or Philadelphia, and the fact that a picture had been publicly exhibited would not necessarily determine its character as decent or indecent. Indeed, there is but little scope for proof bearing upon the issue of decency or obscenity beyond the evidence furnished by the picture itself.

The question which was excluded, if intended to bring out the fact that pictures might be either decent or indecent, and that the canons of pure art would accept those of one class and reject those of the other was properly rejected, as an attempt to prove a self-evident proposition. If the question was intended to be followed by proof that, according to the standard of judgment adopted and recognized by artists, the photographs in question were not obscene or indecent, it was properly rejected for the reason that the issue was not, whether, in the opinion of witnesses or of a class of people, the photographs were indecent or obscene, but whether they were so in fact, and upon this issue witnesses could neither be permitted to give their own opinions or to state the aggregate opinion of a particular class or part of the community. To permit such evidence would put the witness in the place of the jury and the latter would have no function to discharge. The testimony of experts is not admissible upon matters of judgment within the knowledge and experience of ordinary jurymen. 1 *Greenl. Ev.* 440. The question whether a picture or writing is obscene, is one of the plainest that can be presented to a jury, and under the guidance of a discreet judge there is little danger of their reaching a wrong conclusion. The opinions of witnesses would not aid the jury in reaching a conclusion, and their admission would contravene the general rule that facts and not opinions are to be given in evidence.

The defendant's counsel, at the conclusion of the evidence, made several requests to charge, which were denied by the trial judge. The leading purpose of those requests was to induce the court to lay down the rule that the intent of a defendant in selling a picture claimed to be indecent and obscene is an

important element in determining his guilt. The statute makes the selling of an obscene and indecent picture a misdemeanor. There is no exception by reason of any special intent in making the sale. The object of the statute was to suppress the traffic in obscene publications, and to protect the community against the contamination and pollution arising from their exhibition and distribution. It would, we conceive, be no answer to an indictment under the statute for the sale of an obscene picture, that it was sold to a person not liable to be injured by it, or that it was a picture, in respect to execution, of distinguished merit.

In Regina v. Hicklin (supra) the question arose whether a certain book was obscene, and liable to seizure for that reason under an English statute. It appeared that it was published to expose the alleged immoralities of private confession in the Roman Catholic church. But the court having found that passages purporting to be extracts from the writings of Roman Catholics were obscene in fact, it was held that the intent of the publication, however innocent, was no answer to the proceeding.

We do not doubt that whether a publication is obscene or not may in some cases depend on circumstances. For example, a medical book for the instruction of medical men may contain illustrations suitable and proper as a part of the work, but which, if detached and published alone for circulation, might be deemed indecent under the statute. In the present case there was no evidence to which the requests to charge were applicable. The pictures in question were kept for general sale, except that they were not sold to boys under twenty-one years of age. The requests as applied to the case were a series of abstract propositions, having no relation to the issue, and were on that ground, independently of any other consideration, properly denied. We find no error in the record. The case seems to have been fairly tried, and was submitted to the jury in a careful charge, and with the verdict of the jury this court cannot interfere. The statute is an important one, and while it should have a reasonable and not a strained construction, at the same time it ought to have such a practical interpretation

by the court and jury as will subserve the important purpose of the enactment.

The judgment should be affirmed.

All concur.

NOTE.—A pamphlet on the treatment of spermatorrhœa and impotency made up largely of extracts from standard medical works, but of an obscene and indecent character intended to be circulated generally, comes within the provisions of the U. S. statute (*U. S. Rev. Stat.* § 3893) against the mailing of obscene or indecent publications. United States *v.* Chesman, 19 *Fed. Rep.* 497 (Circuit Ct. E. D. Missouri, 30th March, 1881).

In the most recent case on this subject, a prosecution for giving away an indecent pictorial newspaper, tending to debauch the public morals, with intent to circulate the same, the defendant sought to introduce in evidence other publications of a similar character. On appeal the court held that such evidence was inadmissible and wrote as follows : "We are of opinion that the court did right in prohibiting him from reading and exhibiting to them, pictures publicly displayed which he claimed to be of a more indecent character and having a more direct tendency to debauch public morals than anything that appeared in the paper prosecuted. As well might the keeper of a lewd or disorderly house or the proprietor of a gaming-house or table claim, that he has not violated the law when called upon upon to answer for his offense, because others indulged in these nefarious practices openly and with impunity and were not prosecuted for their criminal offences. . . . . . . To have suffered this defendant to have roamed through the wide field of vulgar erotic literature and obscene pictorial illustration and parade before the court and country nude pictures designed to excite passion, and lascivious and wanton articles taken from the daily press, would not only have been an abuse of the law under which this right is claimed, but would have been pandering to, and encouraging the very evil which the statute then being enforced was designed to suppress. No respectable magistrate could for a moment tolerate a spectacle so gross and outrageous." Montross *v.* State, 17 *Rep.* 783 (Supreme Ct., Georgia, April, 1884).