## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### July 9, 1920.

## THE PEOPLE v. CLINTON T. BRAINARD AND HARPER & BROTHERS.*

(192 App. Div. 816.)

(1) POSSESSION OF OBSCENE BOOK—PENAL LAW, § 1141—WHEN PRESIDENT OF CORPORATION CANNOT BE CONVICTED OF SAID CRIME.

The president of an incorporated publishing company who had no knowledge that his company intended to publish a certain book, the merits

* See note, 21 N. Y. Crim. 255.

of which were passed upon at a literary conference of members of the corporation, and who was, in fact, absent from the country at the time and who had never read the book and took no part in its sale or offer for sale, cannot be convicted of the crime of unlawfully possessing an obscene book in violation of section 1141 of the Penal Law.

(2) SAME—PENAL LAW, § 164, CONSTRUED.

Section 164 of the Penal Law, making editors and proprietors of publishing houses chargeable with the publication of any matter contained in books, etc., published by them and which allows the defendant to show that the publication was without his knowledge or against his wishes, etc., does not include persons who merely have possession of such publication with intent to sell, and is aimed at those guilty of the publication of the book or article contemplated thereby.

(3) SAME—PUBLICATION HELD NOT TO BE OBSCENE WITHIN PURVIEW OF STATUTE.

Publication examined, and *held*, that a conviction for a violation of section 1141 of the Penal Law based upon a finding that said publication was obscene, etc., contrary to the statute, was against the weight of the evidence and that a conviction of the corporation offering such book for sale and of its president should be reversed and the information against them dismissed.

DOWLING, J., dissents in part, with opinion.

APPEAL by the defendants, Clinton T. Brainard and another, from a judgment of the Court of Special Sessions of the City of New York, rendered on the 30th day of January, 1920, convicting them of the crime of unlawfully possessing an obscene book in violation of section 1141 of the Penal Law.

*Francis M. Scott,* for the appellant Clinton T. Brainard.

*John Larkin,* for the appellant Harper & Brothers.

*Robert S. Johnstone (Felix C. Benvenga* with him on the brief), *Edward Swann, District Attorney,* for the respondent.

SMITH, J.:

The defendant corporation appealed upon the ground that the possession of the book with intent to sell and show the same did not offend against the provisions of the law. The individual

defendant appeals upon the same ground and also upon the ground that he was not a party to the offense charged.

Considering first the appeal of the defendant Brainard, it is sought to sustain his conviction under section 164 of the Penal Law. The defendant Brainard was the president of Harper & Brothers, which corporation confessedly had possession of the book and offered the same for sale. The evidence shows that when the book was presented for sale the same was referred to a literary conference, regularly composed of certain officers and employees of the corporation. The president of the corporation was not a member of that conference. The book was considered and passed upon by the literary conference, and if it were deemed a proper book for sale and the sale of it promised financial success, the book was accepted and offered for sale. This book received the unanimous approval of this literary conference, but from the evidence it appears that the defendant Brainard had no knowledge of the fact that it had been submitted or that it had been approved, and had been absent from the country part of the time since its offer for sale and sale, had never read the book and was in no way such a party to its sale or offer for sale as that he could be deemed to have aided or abetted in the sale or offer to sell. In case there was a disagreement in the literary conference, it appears that the matter was submitted to the president of the corporation and the president had the power to veto its acceptance and sale if he had knowledge of any reason existing therefor. The essence of his crime, if he committed any, was his failing to so supervise the affairs of the corporation that he should have knowledge of every book offered for sale by the corporation and failure to prevent such sale. In support of the conviction the People rely upon section 164 of the Penal Law, which provides that "Every editor or proprietor of a book, newspaper or serial and every manager of a partnership or incorporated association by which a book, newspaper or serial is issued, is chargeable with the publication of any matter

contained in such book, newspaper or serial. But in every prosecution therefor, the defendant may show in his defense that the matter complained of was published without his knowledge or fault and against his wishes, by another who had no authority from him to make the publication and whose act was disavowed by him so soon as known."

It will be noted in the first place that the information did not charge that this book was published by the said corporation, but only that the defendant had possession of, " with intent to sell and show the same." Section 164 would seem to create criminal liability in the manager of a publishing firm which " publishes " a book within the contemplation of the section, and it is provided in that section that the defendant may show in his defense that the matter complained of " was published " without his knowledge or fault and against his wishes, by another who had no authority from him to make the publication and whose act was disavowed by him so soon as known. The section seems to be aimed at those guilty of the publication of the book or article contemplated thereby, and it clearly does not include those who merely have possession of the book with intent to sell and show the same. Again, this section is included in article 14 of the Penal Law, entitled " Anarchy." Every other section in that article has reference to the crime of criminal anarchy, and by well-known rules of interpretation this section must be read in connection with the title of the article wherein it is contained, and cannot be deemed to state a general law of liability for all crimes of every description.

That the defendant Brainard, whether as president or manager of the defendant corporation, is not liable for the criminal acts of the corporation committed without his knowledge or privity, would seem to be held in People v. Clark (8 N. Y. Crim. Rep. 179) and in People ex rel. Carvalho v. Warden of City Prison (144 App. Div. 24, 26 N. Y. Crim. 129; affd., 212 N. Y. 612). In Wahlheimer v. Hardenbergh (217 N. Y. 264) the Court of Appeals held that the general manager of an

unincorporated association was not liable civilly for damages
for the publication of a libel, which publication was made with-
out his knowledge or acquiescence.    In People v. Taylor (192
N. Y. 398, 23 N. Y. Crim. 23) the superintendent of a corpora-
tion was held not to be liable criminally for the employment by
a foreman of a child under sixteen years of age contrary to the
statute.    It was assumed that the owner was liable, but that the
superintendent was not lilable unless he had knowledge of or
acquiesced in the employment.    In People ex rel. Price v.
Sheffield Farms Co. (225 N. Y. 25) " the corporation " was
held liable criminally for the employment by a subordinate of
a child under the lawful age.    This contention cannot be sus-
tained unless we are prepared to hold that the manager of a
corporation is criminally liable for every criminal act committed
by any subordinate officer of the corporation in connection with
his duties in behalf of the corporation.    I do not understand
that any authority has asserted any such broad proposition, and
such a proposition of law should only be held upon a statute
clearly expressing such an intent.    Moreover, an examination
of the other sections of article 106, entitled " Indecency," in
which section 1141 is found, would indicate the contrary intent.
By section 1140a (as added by Laws of 1909, chap. 279), the
section immediately preceding the section here construed, it is
provided that any person who " as owner, manager, director or
agent," or in any other capacity, prepares, advertises, gives,
presents or participates in, any obscene, indecent or immoral
play which would tend to the corruption of the morals of youth
or others, and any person aiding or abetting such act, and any
owner, lessee or manager of any garden, building or room, who
leases or lets the same or permits the same to be used for any
such purposes of such production, knowingly, or who assents to
the use of the same for any such purpose, shall be guilty of a
misdemeanor.    By section 1146 (as amd. by Laws of 1913,
chap. 591) it is made a crime to keep a disorderly house, and
it is therein provided that whosoever " as owner, agent or

lessor " shall agree to lease or rent or contract for letting any building or part thereof, knowing or with good reason to know that it is intended for such use, or " knowingly * * * permits " the same to be so used, shall be guilty of a misdemeanor. By section 1141, however, no reference is made to any manager, agent or director, but the charge is imputed only to the person who has in his possession with intent to show any obscene, lewd, lascivious book, etc. It would seem that if it had been the intent of the section to make a manager of a corporation liable for acts done by his subordinates without his knowledge, in view of these other provisions in the same article treating of indecency, this section would have so provided in explicit terms. The appeal, therefore, of the defendant Brainard must prevail and his conviction must be reversed and the indictment as to him dismissed.

The remaining question is as to the liability of the corporation for the publication of the book complained of. Section 1141 of the Penal Law makes it criminal for a person to have in his possession with intent to sell, lend or give away, or to show " any obscene, lewd, lascivious, filthy, indecent or disgusting book," and such is the information upon which these defendants have been convicted. This section is similar to section 317 of the Penal Code. That section was construed by the Court of Appeals in People v. Eastman (188 N. Y. 478, 21 N. Y. Crim. 243), in which it is said: " From the context of the statute it is apparent that it is directed against lewd, lascivious and salacious or obscene publications, the tendency of which is to excite lustful and lecherous desire."

I venture that no one can read this book and truthfully say that it contains a single word or picture which tends to excite lustful or lecherous desire. It contains the autobiography of a prostitute, but without the recital of any facts which come within the condemnation of the section as thus interpreted. I can see no useful purpose in the publication of the book. I cannot agree that it has any moral lesson to teach. Its publi-

cation might well be prohibited as a recital of life in the underworld, as is prohibited books containing recitals of crimes. Whether prostitution is a crime in the communities wherein the incidents related in the book are stated to have taken place, does not appear, and in any event this information upon which this conviction was had does not purport to be under subdivision 2 of section 1141, but under subdivision 1, and specifically under that part thereof which charges that the defendant had in its possession, " with intent to sell and show," an indecent book. It is true that whether the book offends against this statute is ordinarily a question of fact for the jury in the first place to determine.    It is equally true that upon the review of a conviction for having offended against this provision, it is the duty of this court to examine the publication and see whether the conviction can be sustained under the facts proven.    Upon an examination of the book I am satisfied that neither defendant has been guilty of the offense charged in the information, and for this reason the judgment and conviction of the defendant corporation, as well as the defendant Brainard, should be reversed and the information dismissed.

CLARKE, P. J., and PAGE, J., concur; DOWLING, J., dissents.

CLARKE, P. J. (concurring) :

It is settled law that whether a book, publication, print or picture is " obscene, lewd, lascivious, filthy, indecent or disgusting " is primarily a question of fact to be determined by the triers of fact.    (Penal Law, § 1141; Dreiser v. Lane Co., 183 App. Div. 773.)

This court has the same power to review that determination as it has to review any other, and to reverse the same as against the evidence or the weight thereof.    (Code Crim. Proc., § 527; Inf. Crim. Cts. Act of City of N. Y. [Laws of 1910, chap. 659], § 40.)    Within its interpretation by the Court of Appeals in People v. Eastman (188 N. Y. 478) the book under

consideration does not violate the statute, the finding of obscenity is against the evidence, and the judgment should be reversed.

PAGE, J., concurs; GREENBAUM, J., concurs in result.

DOWLING, J. (dissenting):

I concur in the reversal of the judgment of conviction of the defendant Brainard, upon the ground that he was not responsible for the publication of the book in question, knew nothing of its acceptance, had no connection with its issue, did not pass judgment upon its suitability, and had no knowledge whatever of its character. He had not even heard of the work until this prosecution was instituted. No duty devolved upon him as president of the defendant corporation, Harper & Brothers, the neglect or violation of which led to the publication of the book. I do not see how liability, therefore, can be in any way charged to him.

I dissent from the reversal of the judgment of conviction of the defendant Harper & Brothers. The book in question has been submitted to the triers of the fact, the trial justices, who have found that it comes within the prohibition of the statute. I agree with the conclusion reached by them.

Penal Law, section 1141, under which the defendant was convicted, is contained in article 106, entitled " Indecency ; " and so far as applicable reads: " A person who sells, lends, gives away or shows, or offers to sell, lend, give away, or show, or has in his possession with intent to sell, lend or give away, or to show, or advertises in any manner, or who otherwise offers for loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, 'paper, picture, drawing, photograph, figure or image, or any written or printed matter of an indecent character;   *   *   *   Is guilty of a misdemeanor," etc.

The statute " is directed against lewd, lascivious and salacious or obscene publications, the tendency of which is to excite lustful and lecherous desires." (People v. Eastman, 188 N. Y. 478, 480.) Its object is " to protect public morals, especially of that class of the community whose character is not so completely formed as to be proof against the lewd effects of the pictures, photographs and publications prohibited." (People v. Muller, 32 Hun, 209, 212, 213; affd. 96 N. Y. 408.)

The test as to what is an obscene publication is: " Whether the tendency of the matter charged as obscenity is to deprave or corrupt those whose minds are open to such immoral influences and who might come into contact with it." (People v. Muller, 96 N. Y. 408, 411; Regina v. Hicklin, L. R. 3 Q. B. 360; 11 Cox C. C. 19.) " What is the judgment of the aggregate sense of the community reached by it? What is its probable, reasonable effect on the sense of decency, purity and chastity of society, extending to the family, made up of men and women, young boys and girls—the family, which is the common nursery of mankind, the foundation rock upon which the state reposes?" (United States v. Harmon, 45 Fed. Rep. 414; revd. on other grounds, 50 id. 921.) As was said by Cockburn, Ch. J. (11 Cox C. C. 19), the test of obscenity is whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands the publication may fall.

This book purports to be the autobiography of a common prostitute. It is filled with the revolting details of the author's life in various houses of ill-fame in different sections of this country. It sets forth at length the physical and financial difficulties attendant upon her chosen means of livelihood, as well as her periods of successful operations. Her continued periods of drunkenness, her diseased conditions, her cynical disregard for decency, are all narrated. The book reveals no purpose to act as a warning to others against embarking on a similar career. It is simply an effort to exploit prurient curios-

ity.   If houses of prostitution and resorts of vice are condemned by law and every possible effort made to suppress them for the good of the community, I see no reason why the vicious and filthy incidents of the lives of the inmates of such illicit resorts should be allowed to be spread before the public, young and old, in the printed pages.   That the subject-matter of this book is vulgar and degrading does not necessarily destroy its corrupting effect on the minds and morals of those who may read it.   It is not necessary that a publication should be of a high order literary merit or depict pleasant episodes to make it obscene.   This book is suggestive throughout.   It offends decency and good morals.   In my opinion it completely meets the description of the books forbidden by the statute and I think the conviction of the defendant Harper & Brothers was right and should be affirmed.

Judgments reversed and information dismissed.   Settle orders on notice.