Froessel, J. (dissenting).
For well nigh a century (L. 1868, ch. 430, Penal Code, L. 1881, ch. 676, § 317; Penal Law, § 1141), our Legislature has declared the public policy of this State with respect to the age-old problem of obscenity. The common judgment that obscenity should be restrained is also reflected in the international Agreement for the Suppression of the Circulation of Obscene Publications entered into by more than 50 countries (37 U. S. Stat. 1511; Treaties in Force [U. S. State Dept., Office of Legal Advisor, Oct. 31, 1956], p. 209); in the obscenity laws of our 48 States (1955) (Hearings before 'Subcommittee to Investigate Juvenile Delinquency of the Senate Committee on the Judiciary pursuant to Senate Bes. 62, 84th Cong., 1st Sess. [May 24,1955]); and in the score of obscenity laws enacted by Congress since 1842. (Roth v. United States, together with Alberts v. California, 354 U. S. 476, 485.)
It is our duty to enforce that public policy in the light of developing constitutional standards, rather than the views expressed in selected articles, though informing and well intentioned, which would justify or acquiesce in the alleged necessity of allowing the distribution of the kind of material complained of in this case. The principal question before us is whether “ Gent ”, the magazine in evidence, is obscene under our statute.
*591 The Supreme Court of the United States, in Roth v. United States (354 U. S. 476, supra), crystallized the current standard or test for judging obscenity. It recognized (p. 487), as do we, that “ sex and obscenity are not synonymous ”. It held, as it had previously indicated in Chaplinsky v. New Hampshire (315 U. S. 568, 571-572), that “ obscenity is not within the area of constitutionally protected speech or press ”. “ Obscene material ”, the court said, “ is material which deals with sex in a manner appealing to prurient interest”, which is defined as “ material having a tendency to excite lustful thoughts ” (Roth v. United States, supra, 354 U. S. 476, 485, 487).
In that case, the court approved the following instruction of the Trial Judge: “ ‘ The words “ obscene, lewd and lascivious ” as used in the law, signify that form of immorality which has relation to sexual impurity and has a tendency to excite lustful thoughts.’ ” “ The test ”, Justice Brennan stated (p. 489), is “whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest ’ ’, which test ‘ ‘ provides safeguards adequate to withstand the charge of constitutional infirmity ”.
In Matter of Excelsior Pictures Corp. v. Regents of Univ. of State of N. Y. (3 N Y 2d 237, 240) (then) Judge Desmond, writing for the majority, defined the term “ obscene in the sense in which the law has used that term for centuries ” as “ sexually impure or filthy ”, and noted (p. 246) that “ ‘ obscenity, real, serious, not imagined or puritanically exaggerated, is today as in all past centuries, a public evil, a public nuisance, a public pollution ’ ”. In his concurring opinion, Judge Fuld, “ in wholehearted agreement ” with this latter statement, felt that the “ evil * * * may be adequately dealt with by resort to the courts in the first instance, either by criminal prosecution (Penal Law, § 1141) or by injunctive process ” (3 N'T 2d, at p. 247). We are now called upon to deál with a criminal prosecution, not one of prior restraint.
We find nothing in the First Amendment or in the language of the Roth case (supra) which dictates the strict construction of section 1141 now proposed by Judge Fuld. By limiting the applicability of that section only to what he termed “ hard-core pornography ”, we would be adopting a far more stringent test *592 than is required under present constitutional standards, and in effect be opening the door to obscenity so widely as to be tantamount to a repeal in large measure of section 1141. Since we may constitutionally give vitality to the legislative enactment, why is it necessary for us to strain against the definition laid down by the highest court in the land in order to permit the continued distribution of material which the average person would unhesitatingly condemn as obscene and lewd?
There is a broad area between material which all would concede is shockingly and unquestionably obscene, and matter which all would agree is clearly free of obscenity. It is.urged that the critical point in the compromise lies between these two extremes, and that, quoting Judge Cardozo (Paradoxes of Legal Science, p. 37): “ All we can say is that the line will be higher than the lowest level of moral principle and practice, and lower than the highest.” Yet the determination is promptly made that the statute should apply only to the lowest level, namely, “ hard-core ” pornography, despite Judge Cardozo’s further statement: “It [the law] will follow, or strive to follow, the principle and practice of the men and women of the community whom the social mind would rank as intelligent and virtuous ’ ’ (id., p. 37).
Courts may not abdicate their function of judging material between these two extremes by relegating it all to the area deemed free of obscenity. We do not hesitate to adjudicate similarly close and difficult situations in other branches of the law, such as, e.g., determining what is fraud, reasonable doubt, premeditation and deliberation—the latter situations often involving human life itself. Or, as Judge Cardozo put it, ‘ ‘ jurisprudence has its reasonable man, its negligent man and * * * its moral man”. We cannot supply scientific definitions or require scientific tests in matters such as these, for law itself is by no means an exact science. “ They do better things with logarithms ” (p. 1).
Applying the test laid down in Roth v. United States (supra, at p. 487), a test Judge Fudd agrees is within the constitutional 11 boundaries of any permissible definition of obscenity ’ ’, all eight Judges below have concluded that the magazine “ Gent ” is obscene under the statute, and their unanimous judgment, *593 rendered in the exercise of their ‘ ‘ function as the spokesmen of the thought and sentiment of the community ”, should not be lightly set aside (People v. Pesky, 254 N. Y. 373, 374; People v. Osher, 285 N. Y. 793; People v. Muller, 96 N. Y. 408, 410).
The portrayal of sex in the manner presented here is ■“ without any redeeming social worth”,"is not for the purpose of promoting art, literature or science, but is nothing more than a distribution of smut — dirt for dirt’s sake — by a wholesale distributor to local stores and stands for the sole purpose of selfish commercial exploitation. Judges, who in their broad experience have necessarily had to deal with many sordid aspects of human life, are sometimes prone to forget that it is their duty to examine material of this kind through the eyes of ‘ ‘ the average person ”, whether youth or adult. It cannot be gainsaid—and we require no scientific tests to establish it—that the overwhelming mass of people in our State, by and for whom our public policy is made, are opposed to obscenity as finally defined by the Supreme Court in the Roth case (supra).
We are not privileged to rule, as a matter of law, in applying the contemporary community standards test, that the courts below were wrong in determining in effect that ‘ ‘ the average person ” would conclude that the dominant theme of “ Gent ” taken as a whole appeals to prurient interest. If only ‘ ‘ hardcore ” pornography may be proscribed, purveyors of magazines and periodicals — on a large scale and with almost free rein — will be at liberty to flood the newsstands and candy stores in every local community in the State with material ‘ ‘ the average person ” would condemn as obscene and lewd. "
In support of the foregoing views, we now turn to the contents of the magazine itself which, we are asked to rule, as a matter of law, are not obscene. In so doing, we feel constrained to deal with it, not in the abstract as in a vacuum—lest our opinions be deemed mere logomachy—but as it was printed and portrayed for the public at large, and let it speak for itself.
Among the numerous pictures in £ ‘ Gent ’ ’ of nude or partially nude women, many of which are clearly sexually suggestive, is one found on page 11. It is a picture of a totally nude woman, just starting to slip on an undergarment, and saying to another nude woman, whose nakedness is reflected in a mirror on the *594 wall,11 I’d better leave now—before yonr husband comes home.’ ’ This picture clearly and openly imports lesbianism—“ a debauchery of the sexual faculty ”.
An article on page 7 describes an experience between a married man and a young woman. It tells how, while walking to her apartment, he “ absorbed the view of her breasts standing out in bold relief. In his haziness, he pictured her naked from her fleshy shoulders to her liquid underbelly ” (p. 9, col. 1). Then, later, she “ expertly worked [her hand] down his body. Her palm pushed in his belly slightly * * *. Her breathing was louder now, and she wriggled to get into a more erotic position ” (p. 9, col. 2). On page 10: he ‘ * let his finger toy with her nipples until they stood up like pencil erasers. He grabbed her, and drove his tongue to the roof of her mouth. She did it back, and soon they were rubbing and kissing and feeling, and undressing each other. They thrashed on the bed until their rhythmic animal convulsions propelled them to the floor ”.
In another article, entitled “ Outline for an Anthropological Disquisition ” (atp. 53), the author describes a somewhat similar experience, and apologizes for his brutality but is invited by the woman to be more brutal next time.
These are but illustrative of the general content of the magazine, although there is some mild attempt at face saving by the inclusion of some material that is free from smut. In our opinion, the magazine, when read as a whole together with its photographs and illustrations, clearly comes within the test of obscenity, as outlined in the Roth case (supra), and even with the very narrow standards the majority would set. We do not think that, because cases of this kind present problems, courts should make it easy for themselves by holding that only the most depraved situations come within the purview of our statute, as in Brown v. Kingsley Books (1 N Y 2d 177, affd. 354 U. S. 436).
Nor do we have any doubt upon this record of the presence of scienter. Defendant is not a mere retailer, newsstand or candy store owner, but is a wholesaler and distributor engaged solely in this business and with many years of experience. Its general manager Grunin was the only officer active in its management, and he has been engaged in this business for about 40 years. Defendant had the sole and exclusive right to distribute “ Gent ” for the entire County of Richmond, and the magazine was dis *595 tributed to approximately 102 local dealers within a period of two days.
The most cursory inspection of the magazine would have put defendant on notice as to its contents, and, even if it did not know, it may not avoid its responsibility by closing its eyes to what should have been apparent, or by deliberately avoiding ascertaining its contents. In response to questioning, the witness Grunin testified that if one of the magazines he handled contained “ concededly the most obscene and pornographic pictures that anyone could imagine ”, he would not know about it. Indeed, he conceded that no one in the corporation was even authorized to examine the magazines distributed, even those which the corporation classified as “Men’s Candids ”, and, if one did so, he would be discharged. Clearly, in the commercial exploitation of these magazines, defendant gave the definite impression of deliberately avoiding the acquisition of knowledge as to the nature of the products it was selling and distributing.
The order appealed from should be reversed, and the judgment of conviction and sentence imposed thereunder by the Court of Special Sessions reinstated.
Judge Van Vookhis concurs with Judge Ftjld; Chief Judge Desmond concurs in a separate opinion in which Judge Dye concurs; Judge Froessel dissents in an opinion in which Judges Burke and Foster concur.
Order affirmed.