54

EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* HÉCTOR A. SERRANO, acusado y recurrente.

*Número*: O-67-195     *Resuelto*: 28 de febrero de 1974

*Reichard & Colberg,* abogados del acusado y peticionario; *J. E. Rodríguez Rivera, Procurador General Interino, y Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

Compuesto el Tribunal a esta fecha por ocho Jueces, el Juez Asociado Señor Martín emitió opinión para revocar con la cual concurren el Juez Presidente Señor Pérez Pimentel y los Jueces Asociados Señores Dávila e Irizarry Yunqué. El Juez Asociado Señor Cadilla Ginorio emitió opinión para confirmar con la cual concurren los Jueces Asociados Señores Rigau, Torres Rigual y Díaz Cruz. El Juez Asociado Señor Díaz Cruz emitió también opinión para confirmar con la cual concurren los Jueces Asociados Señores Rigau, Torres Rigual y Cadilla Ginorio.

Opinión del JUEZ ASOCIADO SEÑOR MARTÍN recomendando la revocación de la sentencia apelada, con la cual concurren el JUEZ PRESIDENTE SEÑOR PÉREZ PIMENTEL y los JUECES ASOCIADOS SEÑORES DÁVILA e IRIZARRY YUNQUÉ

En el caso de autos se enjuició y fue convicto el señor Héctor A. Serrano por el solo hecho de ser gerente de una corporación porteadora que entregó mercancía tributable sin habérsele presentado previamente la correspondiente autorización del Departamento de Hacienda. (¹)

---

(¹) El Art. 71 de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, 13 L.P.R.A. sec. 4071, castiga como delito menos grave el que un porteador, almacenista o depositario entregue mercancía sujeta a arbitrios sin la autorización del Secretario de Hacienda.

No hubo prueba a los efectos de que el peticionario participara, tuviera conocimiento o autorizara dicha transacción. A pesar de esta ausencia de relación causal, el Procurador General invoca la Sec. Núm. 1 de la Ley Núm. 50 del 7 de mayo de 1937, 34 L.P.R.A. sec. 1661, para sostener la convicción.

La Ley Núm. 50, en su Sec. 1, reza de la siguiente forma:

"Cuando una corporación cometiere un delito menos grave podrá formularse denuncia contra dicha corporación ante la corte correspondiente, como si se tratara de un individuo particular; Disponiéndose, que la denuncia podrá presentarse contra la corporación como tal, o contra el administrador, gerente, mayordomo, superintendente, capataz o director de la corporación que hubiere cometido la infracción de la ley o reglamento de que se trate."

Como puede verse la medida en cuestión consta de dos partes diferentes: (1) La primera oración de la sección 1 establece que el proceso criminal (por un delito menos grave) contra una corporación podrá llevarse como si se tratara de un individuo particular. Esta, ciertamente, es una medida procesal, pues señala la manera o forma de procesar criminalmente a una corporación. (2) El "disponiéndose" impone responsabilidad criminal al "administrador, gerente, mayordomo, superintendente, capataz o director de la corporación que hubiere cometido la infracción de la ley o reglamento de que se trate." Esta es una disposición substantiva, pues no trata de la manera o forma de iniciar, desarrollar o tramitar un proceso judicial, sino que establece responsabilidad por una infracción penal.

Es el "disponiéndose de la Ley Núm. 50 el que se pretende utilizar para sostener la convicción del peticionario. Por eso, debemos primero preguntarnos si dicho "disponiéndose" está aun vigente en vista de la adopción de las Reglas de Procedimiento Criminal en 1963.

La cláusula derogatoria de las Reglas de Procedimiento Criminal lo es la número 254 que dispone:

"El Código de Enjuiciamiento Criminal de Puerto Rico, aprobado el primero de marzo de 1902, según ha sido enmendado hasta el presente, y cualesquiera otras leyes, en todo cuanto se relacione o refiera a procedimiento criminal que sea incompatible o contrario a estas reglas, quedan por éstas derogados."

Surge palmariamente del texto citado que la derogación aludida se refiere a las leyes *que se relacionen o refieran a procedimiento criminal* que sea incompatible o contrario a las Reglas de 1963. Así el Codigo de Enjuiciamiento Criminal de 1902, *en sus disposiciones substantivas,* y cualesquiera otras leyes, en tanto en cuanto contengan medidas substantivas, no fueron derogadas por las Reglas de Procedimiento Criminal de 1963.

Esta interpretación de la Regla 254 coincide con lo expresado en el Informe del Comité de Procedimiento Criminal de la Conferencia Judicial de Puerto Rico establecida en 1954. [2] El Lic. Francisco Ponsa Feliú, Presidente del Comité de Procedimiento Criminal, en su ponencia sobre el Informe del Comité ante dicha Conferencia Judicial, expresó:

". . . El propósito es que se derogue totalmente el Código de Enjuiciamiento Criminal vigente, que se derogue totalmente el Código de Enjuiciamiento Criminal vigente. *Hay un número de disposiciones en el Código, sin embargo, que son disposiciones de naturaleza sustantiva. Esas disposiciones en la cláusula derogatoria que se prepare, deberán ser, naturalmente, salvadas de la derogación.*" (Énfasis suplido.) Conferencia Judicial de Puerto Rico, Memoria de la Primera Sesión Plenaria, 12 de diciembre de 1958, pág. 141.

Siendo el "disponiéndose" de la Ley Núm. 50 del 7 de mayo de 1937 una disposición substantiva y refiriéndose la

---

[2] El Comité de Procedimiento Criminal fue nombrado por este Tribunal el 18 de noviembre de 1957 siendo este Comité el responsable de la formulación del proyecto de Reglas de Procedimiento Criminal, que con algunas modificaciones pasaron a ser las Reglas de 1963.

Regla 254 de Procedimiento Criminal a la derogación de leyes de naturaleza procesal, es inescapable la conclusión de que el referido "disponiéndose" no fue derogado con la adopción de las Reglas de Procedimiento Criminal en 1963.

Aclarada la vigencia de la disposición legal contenida en el "disponiéndose", veamos su interpretación. Básicamente el problema interpretativo que está planteado es la determinación de si la frase "que hubiere cometido la infracción de la ley o reglamento de que se trate", que se expresa al final del "disponiéndose" de la Ley Núm. 50, se refiere a la corporación propiamente o al funcionario que allí se denomina como gerente, administrador, mayordomo, superintendente, capataz o director. Si determináramos que se refiere a la corporación estaríamos diciendo que el "disponiéndose" tiene el efecto de descartar la exigencia de causalidad que en todo caso de responsabilidad criminal o civil, como regla general, debe ser demostrada, y que en los casos penales debe surgir más allá de toda duda razonable. Por el contrario, si entendiéramos que la frase en cuestión se refiere a los funcionarios que la ley menciona, no tenemos duda de que debe probarse la participación activa de éstos en la comisión del acto punible.

Hemos favorecido la interpretación restrictiva de los estatutos penales a favor del acusado. *Mari Bras* v. *Alcaide,* 100 D.P.R. 506, 517 (1972); *Pueblo* v. *Tribunal Superior*, 101 D.P.R. 439 (1973). Ya anteriormente este Tribunal había reconocido como un principio general de Derecho el que un oficial de una corporación no es responsable por los actos delictivos de la corporación si éste no ha participado en la conducta ilegal de que se trate. *Pueblo* v. *Rojo,* 66 D.P.R. 919, 923 (1947). Similar norma general ha sido sostenida por la jurisprudencia de muchas jurisdicciones estatales. *Blacketer* v. *State*, Okl. Cr., 485 P.2d 1069, 1072 (1971); *Clifton* v. *State*, 51 Del. 339, 145 A.2d 392 (1958); *People* v. *Dalsis,* 168 N.Y.S.2d 549, 555 (1957); *People* v. *Lieber*, 304 P.2d 869, 146 C.A.2d Supp. 910 (1956); *People* v. *International*

*Steel Corp.* 226 P.2d 587, 592, 102 Cal. App.2d Supp. 935 (1951); *People* v. *Brainard,* 183 N.Y.S. 452, 192 App. Div. 816 (1920).

Si interpretáramos liberalmente el "disponiéndose" en cuestión para imponer responsabilidad absoluta a los oficiales o empleados corporativos aludidos estaríamos violando la norma de hermenéutica sostenida por una larga tradición jurisprudencial, que exige que se resuelva la duda a favor del acusado (véase *Pueblo* v. *Tribunal Superior,* supra); y por ende se pondría en peligro la validez constitucional del referido disponiéndose en tanto en cuanto imputa la comisión de un delito a un inocente sin exigir prueba de su conexión con el delito imputado. *Pueblo* v. *Mantilla,* 71 D.P.R. 36, 41 (1950).

Resultan especialmente pertinentes y aleccionadoras en este caso las siguientes palabras del Tribunal Supremo de Estados Unidos, en *Fairmont Co.* v. *Minnesota,* 274 U.S. 1, 10, que este Tribunal adoptó hace ya más de dos décadas:

"No es permisible aprobar una ley que en efecto tienda una red para que todo el mundo caiga en ella, en la posibilidad de que, si bien los inocentes caerán en sus tejidos, también algún delincuente caiga en igual forma." *Pueblo* v. *Mantilla,* supra, a la pág. 40.

En vista de lo expresado precedentemente es forzoso concluir que la mencionada frase: "que hubiere cometido la infracción de la ley o reglamento de que se trate", contenida en el "disponiéndose" de la Ley Núm. 50, no autoriza la imputación de un delito a los funcionarios o empleados de la corporación allí mencionados a menos que aquéllos fueren conectados con la comisión del delito. Debía revocarse la sentencia apelada y absolverse libremente al peticionario.

—O—

Opinión del JUEZ ASOCIADO SEÑOR CADILLA GINORIO recomendando la confirmación de la sentencia apelada con la cual

concurren los JUECES ASOCIADOS SEÑORES RIGAU, TORRES RIGUAL y DÍAZ CRUZ.

San Juan, Puerto Rico, a 28 de febrero de 1974

Se trata de un sentencia dictada en apelación, por la Sala de San Juan, del Tribunal Superior de Puerto Rico (Hon. Herminio Miranda Jr., Juez), confirmando la del Tribunal de Distrito, Sala de San Juan (Hon. Ana D. Sánchez de Morales, Juez) por la cual se encontró culpable al Sr. Héctor A. Serrano del delito imputádole, y se le condenó al pago de $100.00 de multa, sin costas.

La prueba demuestra que el señor Héctor A. Serrano era el Gerente[1] de la corporación porteadora Add Airfreight Corporation, la cual entregó a la Refrigeration Parts Equipment una mercancía tributable remitida por la firma The Trans. Co., de Clarksville, Tenn., sin haber pagado los arbitrios correspondientes, en violación al Art. 71 de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, Ley Núm. 2 de 1956, 13 L.P.R.A. sec. 4071. [2]

El diccionario Vox define la palabra "Gerente", así:

*"Gerente:* (1. gerere, *dirigir*) m. Director de una empresa o sociedad mercantil." [3]

Y el de la Real Academia Española la define así:

*"Gerente:* (del lat. *gerens, entis*, p. a. de *gerere*, dirigir) *Com.* El que dirige los negocios y lleva la firma en una sociedad o empresa mercantil, con arreglo a su constitución." [4]

[1] Véase declaración de Héctor Serrano en la Relación del Caso de la Juez de Distrito, pág. 2.

[2] Dicha sección prohíbe la entrega de la mercancía por el porteador sin que se le presente una certificación del Secretario de Hacienda autorizando la entrega de la mercancía, sin haberse efectuado el pago de los arbitrios correspondientes; y declara tal actuación un delito menos grave. Requeridas las dos corporaciones, se han negado a pagar los arbitrios.

[3] (Vox: *Diccionario General Ilustrado de la Lengua Española,* Editorial Bibliograph, Barcelona, España, 1972; pág. 842.)

[4] (*Diccionario de la Lengua Española,* de la Real Academia Española, Madrid, 1970, pág. 663.)

Según declaró el agente de Rentas Internas, el señor Serrano, al ser requerido para el pago de los arbitrios, se negó a ello, alegando que esa mercancía no fue entregada por ellos; pero estoy de acuerdo con el juez de instancia, en que el señor Serrano, como gerente, tenía el ". . . control de todo lo de la compañía", conforme a la definición que dan los diccionarios de la lengua española citados, en cuanto a lo que es un gerente.

Serrano declaró que él no tenía que ver directamente con la entrega de la mercancía ni dió órdenes para su entrega y que el encargado de esta función era el vice-presidente señor Orlando Torres y que había un *gerente de entrega*, el señor Mario Vélez.

Es natural que un funcionario que desempeñaba el cargo del señor Serrano, no podía personalmente ocuparse de las múltiples labores que tiene una corporación; pero por la naturaleza de su cargo todos los empleados estaban bajo su supervisión.

Creo que la Ley Núm. 50 del 7 de mayo de 1937, sec. 1, 34 L.P.R.A. sec. 1661, demuestra el propósito del legislador de imponer responsabilidad a los funcionarios expresados en ella, por los actos de la corporación; en este caso especial, en armonía con el Art. 71 de la Ley Núm. 2, *supra*. Es una manifestación absoluta y clara del poder legislativo, para proteger al gobierno: en este caso en cobro de sus arbitrios; y evitar que se defraude al erario público, como ocurrió en el caso de autos. Mantener lo contrario sería abrir una brecha en la ley a través de la cual los porteadores podrían, fácil e impunemente, eludir el pago de los arbitrios recurriendo al taimado recurso de mandar a un empleado desconocido a entregar la mercancía al consignatario sin la certificación del Secretario de Hacienda y sin pagarse los derechos correspondientes. El señor Serrano, no importa que no hubiera hecho la entrega personalmente, era responsable de la actuación de dicha entrega por la corporación, y no podía ignorar las disposiciones

de la Ley, ya que su ignorancia no excusa de su cumplimiento; y, como "Gerente" de la corporación tenía que conocer esa disposición y velar porque las personas encargadas de la entrega no la violaran.

Creo que el caso de *Pueblo* v. *Rojo*, 66 D.P.R. 919 (1947), es distinto a éste porque allí no se acusó a Rojo, como oficial de la corporación, sino individualmente; pero aunque se le hubiera acusado como un oficial de la corporación, la doctrina allí expresada, solamente en cuanto a la responsabilidad de los oficiales de una corporación, debe ser dejada sin efecto, y revocada, aunque tenga un cuarto de siglo de vigencia; porque establece un precedente que induce fácilmente a encontrar un camino tortuoso para violar la ley.

Estoy enteramente de acuerdo con lo expresado por el Juez Asociado Señor Díaz Cruz en su opinión. Contrario a la situación en el caso de *Ortíz Cruz* v. *Junta Hípica*, 101 D.P.R. 791 (1973), en el cual se imponía *responsabilidad absoluta* al entrenador del caballo Igneíto, sin tener dicho entrenador su día en Corte y la oportunidad de defenderse, en el presente caso la ley, no le impone ninguna *responsabilidad absoluta* a los oficiales o empleados de la corporación. El oficial acusado tiene y tuvo la oportunidad de defenderse. A las situaciones que menciona el Señor Juez Díaz Cruz en el párrafo cuarto de su opinión añadimos también el caso de un dependiente que, en ausencia de su principal, infringe un reglamento de precios.

Por las razones expuestas debe confirmarse la sentencia dictada por el Tribunal Superior, Sala de San Juan.

—O—

Opinión del Juez Asociado Señor Díaz Cruz con la cual concurren los Jueces Asociados Señores Rigau, Torres Rigual, y Cadilla Ginorio

San Juan, Puerto Rico, a 28 de febrero de 1974

Como parte del esfuerzo gubernamental para allegar fondos públicos, y especialmente para asegurar la responsabilidad fiscal de las corporaciones, se aprobó por la Asamblea Legislativa hace muchos años, la Ley Núm. 50 de 7 de mayo de 1937 (34 L.P.R.A. sec. 1661) que citamos:

"Cuando una corporación cometiere un delito menos grave podrá formularse denuncia contra dicha corporación ante la corte correspondiente como si se tratara de un individuo particular; Disponiéndose, que la denuncia podrá presentarse contra la corporación como tal, o contra el administrador, gerente, mayordomo, superintendente, capataz o director de la corporación que hubiere cometido la infracción de la ley o reglamento de que se trate."

En el curso de sus operaciones mercantiles, la corporación porteadora Add Airfreight entregó una mercancía que no había pagado impuestos. Se denunció a su presidente y a su administrador general por infracción del Art. 71 de la Ley de Impuestos sobre Artículos de Uso y Consumo que es la Núm. 2 de 20 de enero de 1956 enmendada (13 L.P.R.A. sec. 4071).[1]

Una mitad del tribunal absolvería al gerente general Serrano en base a su propio testimoio de "que él no tenía que ver directamente con la entrega de mercancía, ni dio órdenes

---

[1] Este artículo reza en lo pertinente así:

"Ningún porteador marítimo, aéreo o terrestre ni ningún almacenista o depositario que tenga bajo su custodia artículos tributables por este Subtítulo, podrá entregar la mercancía al consignatario, o persona que propiamente la reclame, a menos que se le presente una certificación del Secretario autorizando la entrega de dicha mercancía y en la forma que por Reglamento éste prescriba. Cualquier porteador, o depositario que

para su entrega y que el encargado de esta función era el vice-presidente Sr. Orlando Torres y que había un gerente *de entrega*, Sr. Mario Vélez." Su defensa es un cándido "yo no fuí", a todas luces inaceptable.

Es irrazonable pretender que para probar el delito come-tido por la corporación tenga el Estado que averiguar cuál de sus oficinas o divisiones tenía a su cargo la entrega de mer-cancía en el caso específico, o en la alternativa denunciar al chófer o al peón del camión que llevan a efecto la entrega física de la mercancía. Para eso no había necesidad de legislar como se hizo mediante Ley Núm. 50 de 7 de mayo de 1937 (34 L.P.R.A. sec. 1661) *supra*.

Esta ley tiene como fin traer las corporaciones a responder ante la justicia con igual eficacia que se persigue al infractor no incorporado; no fue la intención inmunizar las corpora-ciones contra procesos criminales como resultaría ante la exigencia de probar una participación directa de cada oficial o director en cada entrega de mercancía. Si la principal gestión comercial de todo porteador marítimo, aéreo o terrestre, almacenista o depositario es entregar mercancía, las personas naturales que opten por las ventajas corporativas para dedicarse a hacer negocios deben estar avisadas de que no podrán burlar el pago de impuestos, y que si lo hacen los directores y oficiales responderán bajo la misma ficción jurí-dica al amparo de la cual libremente se han organizado.

La opinión que a ésta se opone lee en la Ley Núm. 50 algo que el estatuto no contiene cuando dice: "si determináramos que se refiere a la corporación estaríamos diciendo que el 'disponiéndose' tiene el efecto de descartar la exigencia de causalidad que en todo caso de responsabilidad criminal o

---

viole esta disposición, además de ser convicto de un delito menos grave (*misdemeanor*), vendrá obligado al pago del impuesto correspondiente a dicha mercancía, incluyendo recargos, intereses, multas administrativas, y demás penalidades prescritas en este Subtítulo si dicho pago no es efectuado por el contribuyente."

civil, como regla general, debe ser demostrado, y que en los casos penales debe surgir más allá de duda razonable."

Esta fue una ley aprobada para evitar la evasión de impuestos por las *corporaciones,* y siendo ése su único objetivo no vemos cómo pueda excluírselas por interpretación.

La letra del estatuto no impone ninguna *responsabilidad absoluta* a los oficiales o empleados de la corporación. Nada hay que les impida rebatir la acusación con evidencia que establezca su desvinculación del acto de evasión contributiva por parte de la corporación. La ley ni siquiera establece una presunción controvertible ni regla evidenciaria fijando responsabilidad *prima facie,* método en entera armonía con la Constitución. *Ortiz Cruz* v. *Junta Hípica,* 101 D.P.R. 791 (1973). ¿Por qué eximir de responsabilidad implícita y dar a los oficiales corporativos un tratamiento distinto en el campo del Derecho Penal del que le damos al jefe de familia en cuyo hogar se encuentra un arma de fuego sin registrar; al dueño de un puesto de leche al detall que recibe la leche en envases cerrados de la planta pasteurizadora y que luego el inspector de salud encuentra adulterada; a los ocupantes de un automóvil privado donde se hallaren armas o explosivos; o al pequeño comerciante que tenga en su aparador bebidas alcohólicas sin la correspondiente licencia expedida por el Secretario de Hacienda? ¿Hemos llegado al punto de decir que a éstos no podrá procesárseles "a menos que fueren conectados con la comisión del delito" cuando las circunstancias incriminantes se reducen a vivir en la casa, figurar su nombre en la licencia del puesto, abordar el automóvil o poseer las botellas de licor, en los respectivos casos señalados?

Debe confirmarse la sentencia apelada.